**Jordan Spencer JACOBS,**
**Plaintiff–Appellant,**

v.

**NINTENDO OF AMERICA, INC.,**
**Defendant–Appellee.**

No. 03–1297.

United States Court of Appeals,
Federal Circuit.

DECIDED: May 28, 2004.

Rehearing and Rehearing En Banc
Denied July 7, 2004.

John Edwin Fisher, Fisher, Rushmer, Werrenrath, Dickson, Talley & Dunlap, P.A., of Orlando, FL, argued for plaintiff-appellant. On the brief was Gerard H. Bencen, Patent Arts, of Gainesville, FL.

Robert J. Gunther, Jr., Latham & Watkins LLP, of New York, NY, argued for defendant-appellee. With him on the brief were John J. Kirby, Jr., Daiske Yoshida, and Richard C. Rosalez.

Before MICHEL, BRYSON, and LINN, Circuit Judges.

BRYSON, Circuit Judge.

Patent owner and appellant Jordan Spencer Jacobs terminated a patent infringement lawsuit against Analog Devices, Inc., by entering into a settlement and licensing agreement with Analog. Jacobs later sued appellee Nintendo of America, Inc., for infringing the same patent. As a defense, Nintendo asserted that the settlement agreement between Jacobs and Analog protected not only Analog, but also Analog's customers, including Nintendo, for making and selling devices that incorporated Analog's components. The district court agreed and entered summary judgment in Nintendo's favor. We affirm.

I

Jacobs owns U.S. Patent No. 5,059,958 ("the '958 patent"), entitled "Manually Held Tilt Sensitive Non-Joystick Control Box." The invention relates to a video game controller that the operator holds in two hands. The operator tilts the controller to achieve corresponding motion in the video game. Before suing Nintendo, Jacobs sued various hardware manufacturers, including Microsoft and Logitech, alleging that they were directly infringing the '958 patent. In the same action, Jacobs named Analog as a defendant, charging Analog with inducement and contributory infringement. Jacobs alleged that Analog provided tilt-sensitive components called accelerometers to the other defendants. Although Jacobs did not allege that Analog's accelerometers infringed the '958 patent, he alleged that the other defendants used those components in their tilt-sensitive control boxes, which allegedly infringed the '958 patent.

In July 2001, Jacobs's case against Analog was dismissed pursuant to a settlement agreement. Two provisions of the agreement are critical here:

3. *License.* Jacobs grants Analog an irrevocable, perpetual, fully paid up license to take any actions set forth in 35 U.S.C. § 271 which would, but for this license, constitute an infringement or violation of Jacobs' patent rights under the '958 patent. Without limiting the foregoing, the license granted hereunder includes the right to make, use, sell, import and export components, including micromachined accelerometers, for use in tilt-sensitive control boxes.

5. *Covenant-not-to-sue.* Jacobs covenants not to sue Analog for any alleged infringement or violation of the '958 patent. This covenant-not-

to-sue extends to any cause of action having as an element the infringement of the '958 patent by Analog or any other party, whether occurring in the past, present, or in the future.

After the settlement and dismissal of the litigation against Analog, Jacobs filed a patent infringement action against Nintendo in the United States District Court for the Middle District of Florida. No. 6:01–CV–1379–Orl–31KRS. The complaint charged Nintendo with infringing or inducing infringement of the '958 patent by producing the game "Kirby Tilt 'n Tumble" for its hand-held Game Boy video game systems. When the Kirby game is inserted into the system, the player can control the movement of the Kirby character in the video game by tilting the controller in the desired direction of movement.

Nintendo moved for summary judgment of noninfringement, asserting that it was entitled to practice the '958 patent by virtue of the settlement agreement between Jacobs and Analog, the supplier of the accelerometers for the Kirby game. The district court granted Nintendo's motion and entered judgment of noninfringement for Nintendo. The court held that because the settlement agreement between Jacobs and Analog permitted Analog to sell accelerometers for use in tilt-sensitive control boxes, such as the ones manufactured and sold by Nintendo, the agreement necessarily gave Nintendo an implied license to use the Analog accelerometers in its tilt-sensitive control boxes. For Jacobs to bar Analog's customer, Nintendo, from using Analog's accelerometers in the products expressly referred to in the settlement agreement, the court concluded, would undermine the provision of the agreement permitting the·sale of accelerometers "for use in tilt-sensitive control boxes." The court explained that Jacobs should not be permitted to do "through the back door—by suing a customer of Analog—what he cannot do through the front door," i.e., by suing Analog.

## II

The agreement between Jacobs and Analog granted Analog two important rights: (1) the right not to be sued for infringement of the '958 patent; and (2) the right to "sell . . . micromachined accelerometers for use in tilt-sensitive control boxes." The first right (granted by paragraph 5 of the agreement) provided "peace" by assuring Analog that it would not face any further claims of infringement of the '958 patent based on any of its past or future conduct, including liability for indirect infringement, i.e., a cause of action "having as an element the infringement of the '958 patent by . . . any other party." The second right (granted by paragraph 3 of the agreement) provided "prosperity" by giving Analog a right to sell its accelerometers for a particular use.

Jacobs argues that the settlement agreement protected Analog against being sued for direct or indirect infringement, but that it did not give Nintendo a general right to use Analog's accelerometers in tilt-sensitive control boxes that infringed the '958 patent. Thus, Jacobs contends that paragraph 3 and paragraph 5 of the agreement both secured Analog against the prospect of suit for any of its conduct or any conduct by Analog's customers, but did not grant similar rights to Analog's customers. Nonetheless, Jacobs does not suggest that Nintendo obtained no rights whatsoever from the agreement between Jacobs and Analog. According to Jacobs, paragraph 3 of the agreement would give Nintendo the right to use Analog's accelerometers in infringing control boxes if it could prove that Analog's accelerometers had no noninfringing uses. In that event,

according to Jacobs, the Analog–Jacobs agreement would give Nintendo an implied license to use those accelerometers without liability under the '958 patent, because otherwise the license to sell the accelerometers would be of no commercial benefit to Analog. Jacobs contends, however, that in the absence of proof that the accelerometers had no noninfringing uses, paragraph 3 provides no protection to Nintendo against an action for infringement of the '958 patent based on Nintendo's manufacture and sale of its tilt-sensitive control boxes.

In pressing its argument that Nintendo has an implied license only if it can establish that Analog's accelerometers had no noninfringing uses, Jacobs relies on this court's decision in *Met–Coil Systems Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 686 (Fed.Cir.1986). In *Met–Coil*, this court held that a patent owner's sale of a machine useful only in practicing the claimed invention "plainly indicate[d] that the grant of a license [to practice the invention] should be inferred." Because there were no circumstances tending to show the contrary, this court upheld the district court's conclusion that the patent owner's customers enjoyed an implied license under the patent.

■ The requirement of demonstrating that there is no noninfringing use for the object in question does not apply in the context of this case. The "noninfringing use" doctrine applies when a patentee or its licensee sells an article and the question is whether the sale carries with it a license to engage in conduct that would infringe the patent owner's rights. In that setting, absent an express agreement between the parties, determining whether the sale conveys with it the implied right to use the article in an infringing manner may depend on whether there is any noninfringing use for the article. If there is no nonin-

fringing use, it may be reasonable to infer that there has been "a relinquishment of the patent monopoly with respect to the article sold." *United States v. Univis Lens Co.*, 316 U.S. 241, 249, 62 S.Ct. 1088, 86 L.Ed. 1408 (1942). In such a case, unless the circumstances of the sale indicate that a grant of a license should not be inferred, *see Met–Coil*, 803 F.2d at 686, the patentee will be barred from asserting its patent rights against a downstream purchaser of the article, *see Univis*, 316 U.S. at 249, 62 S.Ct. 1088; *Glass Equip. Dev., Inc. v. Besten, Inc.*, 174 F.3d 1337, 1343 (Fed.Cir.1999).

■ This case is quite different. Here, there is no need to ask whether Analog was authorized to sell its accelerometers to be used in infringing devices, because the Jacobs–Analog agreement must be understood to authorize Analog to sell its accelerometers for such uses.

Jacobs's patent does not, of course, limit anyone's right to make either noninfringing devices or components for noninfringing devices. Therefore, the second sentence of paragraph 3 of the Jacobs–Analog settlement agreement, which authorizes Analog to make and sell accelerometers for use in tilt-sensitive control boxes, makes sense only if it is understood to confer on Analog the right to make and sell accelerometers for use in tilt-sensitive control boxes that would otherwise infringe Jacobs's rights under the '958 patent. For that reason, the question whether there is any noninfringing use for Analog's accelerometers is irrelevant here. The Jacobs–Analog agreement has specifically authorized the sale of those accelerometers for infringing uses. The critical question, then, is whether the clause authorizing that use protects Nintendo against suit based on the use of the accelerometers for the purposes for which Analog was authorized to sell them.

The district court held that the right given to Analog to sell its accelerometers for use in infringing tilt-sensitive control boxes would be meaningless if Jacobs could effectively prevent Analog from making any such sales by suing Analog's customers for putting the accelerometers into infringing control boxes and selling the resulting products. We agree with the district court that the clause granting Analog the right to sell its accelerometers for use in tilt-sensitive control boxes barred Jacobs from interfering with that right by prohibiting Analog's customers from using the accelerometers for that authorized purpose by making, using, and selling control boxes incorporating Analog's devices. That interpretation is in accordance with the basic contract law principle that a party may not assign a right, receive consideration for it, and then take steps that would render the right commercially worthless. *See AMP, Inc. v. United States,* 182 Ct.Cl. 86, 389 F.2d 448, 453 (Ct.Cl.1968) ("a grantor of a property right or interest cannot derogate from the right granted by his own subsequent acts").

Jacobs urges us to interpret paragraph 3 of the Jacobs–Analog agreement as granting Analog only a bare license, i.e., the right not to be sued for making, using, or selling accelerometers for use in tilt-sensitive control boxes. *See, e.g., Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.,* 248 F.3d 1333, 1345 (Fed.Cir. 2001) (a nonexclusive or bare license is "a covenant by the patent owner not to sue the licensee for making, using, or selling the patented invention"); *Spindelfabrik Suessen–Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft,* 829 F.2d 1075, 1081 (Fed. Cir.1987) (a bare license agreement "is in essence nothing more than a promise by the licensor not to sue the licensee"). To interpret paragraph 3 as a bare license, however, would ignore the language of the second sentence of paragraph 3 that goes beyond the creation of a license (conveying the right to make and sell accelerometers "for use in tilt-sensitive control boxes"). In addition, it would make paragraph 3 entirely redundant, because paragraph 5 already ensures Analog freedom from suit "for any alleged infringement or violation of the '958 patent." If all that Jacobs intended to do through the settlement agreement was to free Analog of its liability for infringement, paragraph 5 of the agreement (the covenant not to sue) would have been fully sufficient to serve that purpose. Paragraph 3, however, goes much further by granting Analog an affirmative right to engage in the manufacture and sale of accelerometers to be used in tilt-sensitive control boxes. That grant comes without restriction of any kind.

Jacobs seeks to explain the license granted in paragraph 3 by characterizing it as giving Analog the right to make and sell infringing control boxes on its own or, alternatively, as ensuring that Analog would be free to sell accelerometers to whomever it wanted for use in infringing control boxes, but not protecting Analog's customers from suit for making and selling those boxes. Neither explanation is plausible, however. Jacobs knew that Analog was not in the business of making game controllers, so there is no reason to believe Analog would have bargained for that right. Furthermore, as the district court noted, it is unlikely that Analog would have contracted for the right to manufacture and sell a product knowing that its customers would be unable to use the product that it sold them for the bargained-for purpose. Thus, we agree with the district court that the Jacobs–Analog settlement agreement grants to Analog's customers an implied sublicense to use Analog's accelerometers to make, use, and sell tilt-sensitive control boxes that in-

fringe the 958 patent without interference by Jacobs. The district court therefore properly held that Jacobs was barred from suing Nintendo for infringement of the '958 patent based on Nintendo's manufacture and sale of tilt-sensitive control boxes that incorporated Analog's accelerometers.

*AFFIRMED.*