# United States Court of Appeals for the Federal Circuit

---

**01 COMMUNIQUE LABORATORY, INC.,**
*Plaintiff-Appellant*

**v.**

**CITRIX SYSTEMS, INC., CITRIX ONLINE, LLC,**
*Defendants-Appellees*

---

2017-1869

---

Appeal from the United States District Court for the Northern District of Ohio in No. 1:06-cv-00253-SL, Judge Sara Lioi.

---

Decided: April 26, 2018

---

THOMAS HARRY SHUNK, Baker & Hostetler LLP, Cleveland, OH, argued for plaintiff-appellant. Also represented by CHRISTINA J. MOSER; CHARLES C. CARSON, KENNETH JON SHEEHAN, Washington, DC.

MARK CHRISTOPHER FLEMING, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, argued for defendants-appellees. Also represented by CHRISTOPHER D. DODGE; INDRANIL MUKERJI, RUFFIN B. CORDELL, Fish & Richardson, PC, Washington, DC; GEORGIA YANCHAR, Calfee, Halter & Griswold LLP, Cleveland, OH.

---

Before NEWMAN, MAYER, and STOLL, *Circuit Judges*.

MAYER, *Circuit Judge*.

01 Communique Laboratory, Inc. ("Communique") appeals an order of the United States District Court for the Northern District of Ohio denying its motion for a new trial. *See 01 Communique Lab., Inc. v. Citrix Sys., Inc.*, No. 1:06-CV-00253, 2017 WL 1065573 (N.D. Ohio Mar. 21, 2017) ("*District Court Order*"). We affirm.

## I. BACKGROUND

Communique owns U.S. Patent No. 6,928,479 (the "'479 patent"), which is entitled "System Computer Product and Method for Providing a Private Communication Portal." J.A. 192. The claimed system creates a "private communication portal," '479 patent, col.3 ll.28–29, which allows an individual using a remote computer to access a personal computer via the Internet, *id.* col.3 ll.30–44; *see also id.* col.7 ll.26–48. Specifically, the system uses a "location facility" to "creat[e] a communication channel between the remote computer and the personal computer." *Id.* col.13 l.64–col.14 l.10; *see also id.* col.16 ll.30–34. Claim 24 recites:

A computer program product for use on a server computer linked to the Internet and having a static IP address, for providing access to a personal computer from a remote computer, the personal computer being linked to the Internet, its location on the Internet being defined by either (i) a dynamic public IP address (publicly addressable), or (ii) a dynamic LAN IP address (publicly unaddressable), the computer program product comprising:

(a) a computer usable medium;

(b) computer readable program code recorded or storable in the computer useable medium, the

computer readable program code defining a server computer program on the server computer wherein:

(i) the server computer program is operable to enable a connection between the remote computer and the server computer; and

(ii) the server computer program includes a location facility and is responsive to a request from the remote computer to communicate with the personal computer to act as an intermediary between the personal computer and the remote computer by creating one or more communication sessions there between, said one or more communication sessions being created by the location facility, in response to receipt of the request for communication with the personal computer from the remote computer, by determining a then current location of the personal computer and creating a communication channel between the remote computer and the personal computer, the location facility being operable to create such communication channel whether the personal computer is linked to the Internet directly (with a publicly addressable) dynamic IP address or indirectly via an Internet gateway/proxy (with a publicly unaddressable dynamic LAN IP address).

*Id.* col.13 l.48–col.14 l.15.

In February 2006, Communique brought suit against Citrix Systems, Inc. and Citrix OnLine, LLC (collectively "Citrix"), alleging that Citrix's GoToMyPC remote computer connection service infringed independent claim 24 and dependent claim 45 of the '479 patent. J.A. 115. In March 2008, the district court stayed proceedings pending resolution of a request for *inter partes* reexamination filed by Citrix. J.A. 3021–22. Before the Patent and Trademark Office ("PTO"), Communique's expert, Dr. Gregory

Ganger, asserted that the claims of the '479 patent differed from the prior art because they require that a "location facility" create a communication channel between the remote and personal computers. J.A. 7026; *see 01 Communique Lab., Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1298 (Fed. Cir. 2012) ("Dr. Ganger opined that in the patented invention the location facility creates a communication channel between the remote computer and the personal computer, and that this 'create' limitation would not be satisfied by a location facility 'that is simply used by some other component that creates the communication channel.'" (citation omitted)).

On October 29, 2013, the Patent Trial and Appeal Board confirmed the patentability of claims 24 and 45 over various prior art references, including Citrix's BuddyHelp computer connection service. *See Citrix Sys., Inc. v. 01 Communique Lab., Inc.*, No. 2013-004565, 2013 WL 5866550 (P.T.A.B. Oct. 29, 2013). On appeal, this court affirmed. *See Citrix Sys., Inc. v. 01 Communique Lab., Inc.*, 581 F. App'x 900 (Fed. Cir. 2014).

After the parties returned to district court, Citrix filed a motion for summary judgment, alleging that claims 24 and 45 were patent ineligible under 35 U.S.C. § 101. It argued that the claims "only require[] generic software operating on a generic computer system to implement the abstract idea of connecting two computers, and lack[] additional features necessary to find an inventive concept and ensure that the claim is not simply a drafting effort designed to monopolize an abstract idea." *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 151 F. Supp. 3d 778, 794 (N.D. Ohio 2015) (citations and internal quotation marks omitted) ("*Patent Eligibility Decision*"). According to Citrix, the claimed "invention could be, and was, performed by humans when telephone operators connected one caller to a second caller at the first caller's request." *Id.* at 790. The district court rejected this argument, however, concluding that the '479 patent was directed to

patent eligible subject matter because it "provide[s] a specific solution to remote access problems that is necessarily rooted in computer technology, and thus constitute[s] an inventive concept." *Id.* at 795.*

During claim construction proceedings, the district court construed the phrase "creating a communication channel between the remote computer and the personal computer," '479 patent, col.14 ll.8–10, to mean "making or bringing into existence a communication channel between the remote computer and the personal computer." J.A. 15 (citations and internal quotation marks omitted); *see also* J.A. 3242–43. The trial court denied Citrix's motion to exclude evidence pertaining to the PTO reexamination proceedings related to claims 24 and 45. J.A. 37–39. It held that the reexamination record could be used in a limited manner at trial, but that Citrix could not be identified as the party that requested the reexamination. J.A. 37. The court further ordered that the parties should "refer to the entirety of the proceedings before the PTO as the 'prosecution history.'" J.A. 38. The court determined that "it would be unfairly prejudicial to Citrix to attribute the reexamination request to Citrix or to indicate that it was Citrix that advanced certain arguments in the reexamination process." J.A. 37. The court was concerned that "[t]he jurors [might] put undue weight on the fact that it was Citrix who advanced the arguments which, in the end, were rejected by the PTO, even though the PTO does not make its decision based upon the same standard as used in an infringement/invalidity lawsuit, nor does it

---

\*      Because Citrix does not appeal the district court's determination that the '479 patent is directed to patent-eligible subject matter under 35 U.S.C. § 101, *see Patent Eligibility Decision*, 151 F. Supp. 3d at 794–96, we decline to address that issue.

have the benefit of the full array of evidence that [would] be presented to a jury for its consideration." J.A. 37–38.

After the close of evidence, the trial court provided the jury with very specific instructions.[**] It informed the jury that "[t]he determination of literal infringement depends on the presence of the claim elements in the accused product, not on similarities between the accused product and the prior art." J.A. 2821. It further instructed the jury that "[t]o determine literal infringement, [it] must compare the accused system, GoToMyPC, with each claim that [Communique] asserts is infringed." J.A. 2820. Additionally, the court explained that Citrix bore the burden of proving invalidity by clear and convincing evidence, J.A. 2822, 2826, and that "[t]o anticipate a claim, each and every element in the claim must be present in a single item of prior art and arranged or combined in the same way as recited in the claim," J.A. 2828.

On January 19, 2016, the jury returned a split verdict. It concluded that Citrix had not established that claims 24 and 45 were invalid, but that Communique had not established that Citrix's GoToMyPC product infringed those claims. J.A. 174–75.

After judgment was entered, Communique moved for JMOL of infringement and a new trial. *See* Fed. R. Civ. P. 50(b), 59(a). The trial court denied Communique's motion for JMOL of infringement, explaining that it had "not even mention[ed] that it sought [JMOL] on infringement in its written or oral [Fed. R. Civ. P. 50(a)] motions,

---

[**]    Before the case went to the jury, Communique moved for judgment as a matter of law ("JMOL") of no invalidity, J.A. 2666, but the trial court deferred ruling on this motion. *See District Court Order*, 2017 WL 1065573, at *1–3; *see also* J.A. 2802.

or provide[d] any specificity regarding the law and facts supporting such a judgment." *District Court Order*, 2017 WL 1065573, at \*4.

The district court likewise denied Communique's motion for a new trial. *Id.* at \*5–19. Although Communique contended that the jury verdict of non-infringement was against the weight of the evidence, the court rejected this argument, explaining that "there was more than sufficient evidence from which a reasonable jury could conclude, among other things, that GoToMyPC does not contain a location facility, and/or that the remote and personal computers, not the location facility, create[] the communication channel in GoToMyPC." *Id.* at \*12. Furthermore, although Communique argued that Citrix had improperly compared its accused GoToMyPC product to its prior art BuddyHelp product when it presented its non-infringement defense, the trial court concluded that "Citrix did not make this impermissible comparison." *Id.* at \*16. The court stated that "an examination of the trial transcript shows that during its defense to literal infringement, Citrix did not improperly compare the prior art to the asserted claims of the '479 patent as a defense to literal infringement, but properly compared the accused product—GoToMyPC—to the asserted claims." *Id.* at \*17. In the court's view, moreover, "any limited prejudice that [might] have resulted from the comparisons of [the] prior art to [the GoToMyPC product] during the invalidity phase [of the trial] was cured by the Court's specific instruction to the jury regarding their determination of infringement." *Id.*

Communique then appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

II. DISCUSSION

A. Standard of Review

We review the denial of a motion for a new trial under regional circuit law. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1202 (Fed. Cir. 2010). In the Sixth Circuit, the denial of a motion for a new trial is reviewed for abuse of discretion. *See Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 312 (6th Cir. 2016). "[A] new trial is warranted when a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Balsley v. LFP, Inc.*, 691 F.3d 747, 761 (6th Cir. 2012) (citations and internal quotation marks omitted).

B. Communique's Contentions

Communique asserts that it is entitled to a new trial on the issues of infringement and damages because Citrix resorted to "a well-known defendant's trick," known as the "practicing the prior art defense." It contends that the jury verdict of non-infringement must be set aside because the trial court improperly permitted Citrix to bypass the required comparison between the asserted claims and the accused product and instead to focus on the similarities between Citrix's current GoToMyPC product and its prior art BuddyHelp product. According to Communique, Citrix's reliance on a practicing the prior art defense "was improper, misleading, and devastatingly prejudicial to the integrity of the trial." We find this argument unpersuasive. As a preliminary matter, we reject Communique's assertion that Citrix's infringement defense eschewed the requisite limitation by limitation comparison between the asserted claims and the accused product. *See, e.g.*, *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995) ("Literal infringement exists if each of the limitations of the asserted

claim(s) read on, that is, are found in, the accused device."). Citrix's non-infringement defense was straightforward. It argued that GoToMyPC did not meet the claim limitation requiring that a "location facility . . . creat[e] a communication channel between the remote computer and the personal computer," '479 patent, col.13 l.64–col.14 l.10, because in the GoToMyPC system the remote and personal computers create the communication channel. J.A. 1500–01, 1511–12. Citrix explained that there was no infringement because in the patented system a "central location facility" creates the communication channel and "forces its way through the firewall," but in GoToMyPC "there is no location facility that creates" such a channel. J.A. 1512. Counsel for Citrix carefully explained to the jury that in order to find literal infringement it had to determine that the GoToMyPC product met "each and every one of the elements" of claims 24 and 45. J.A. 1503; *see also* J.A. 2873.

Dr. Ian Foster, Citrix's expert, described the limitations of the asserted claims, J.A. 2480–85, and then detailed how the GoToMyPC product operates, J.A. 2485–89. He concluded, based on his review of the operation of the GoToMyPC product and its source code, that it did not practice the claim limitation requiring that a "location facility . . . creat[e] a communication channel between the remote computer and the personal computer," '479 patent, col.13 l.64–col.14 l.10, because in GoToMyPC "it's the host and the client that create [the] channel," J.A. 2507; *see also* J.A. 2495–506.

Citrix never argued that its accused product did not infringe the asserted claims merely because GoToMyPC shared the same architecture as the prior art BuddyHelp product. To the contrary, as the trial court correctly concluded, "Citrix did not improperly compare the prior art to the asserted claims of the '479 patent as a defense to literal infringement, but properly compared the ac-

cused product—GoToMyPC—to the asserted claims." *District Court Order*, 2017 WL 1065573, at *17.

### C. Citrix's Invalidity Defense

Citrix's infringement defense was firmly rooted in a limitation by limitation comparison between the asserted claims and the GoToMyPC product. But Citrix also presented an alternative invalidity defense that focused on its prior art BuddyHelp product. It argued that under the trial court's claim construction claims 24 and 45 were valid, but not infringed, J.A. 1489–90, 2509, but that if Communique attempted to expand the scope of its claims to include systems in which a location facility merely "directs" other components, such as the end point computers, to create the communication channel, J.A. 1901; *see also* J.A. 1477–81, then the claims would be invalid in light of the prior art, J.A. 2509–15; *see also* J.A. 1518–19, 2462, 3501–02.

There was nothing improper about this argument. We have previously stated that "there is no 'practicing the prior art' defense to literal infringement." *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1365 (Fed. Cir. 2002); *see also Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1335 (Fed. Cir. 2011); *Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008); *Baxter*, 49 F.3d at 1583. The problem with such a defense is that it can potentially allow a defendant to skirt evidentiary hurdles and conflate the infringement and invalidity inquiries. In essence, an accused infringer forsakes any comparison between the asserted claims and the accused product, relying instead upon purported similarities between the accused product and the prior art.

In *Tate*, for example, we declined to overturn a preliminary injunction barring sales of allegedly infringing floor panels where a party's infringement defense rested on its claim that its floor panels could not "literally in-

fringe because they merely practice the prior art, or that which would have been obvious in light of the prior art." 279 F.3d at 1365. We explained that "literal infringement is determined by construing the claims and comparing them to the accused device, not by comparing the accused device to the prior art." *Id.* at 1366. We noted, moreover, that while the issue of whether asserted claims read on the prior art is relevant to the question of invalidity, "accused infringers are not free to flout the requirement of proving invalidity by clear and convincing evidence by asserting a 'practicing [the] prior art' defense to literal infringement under the less stringent preponderance of the evidence standard." *Id.* at 1367.

We confronted an analogous situation in *Zenith*. 522 F.3d at 1363–64. There, an accused infringer asserted that it was entitled to JMOL of invalidity even though it "provided no evidence whatsoever" that a prior art television met two limitations of the claim at issue. *Id.* at 1363. Instead, the accused infringer "merely argued that to the extent the [allegedly infringing television] is considered to practice [the two claim limitations], then so did the [prior art] television." *Id.* (citations and internal quotation marks omitted). We rejected this argument, however, explaining that because "[a]nticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference," simply asserting that the prior art is the same as "an allegedly infringing product cannot constitute clear and convincing evidence of invalidity." *Id.*

Cases such as *Tate* and *Zenith* make clear that an accused infringer cannot defeat a claim of literal infringement or establish invalidity merely by pointing to similarities between an accused product and the prior art. *Id.*; *Tate*, 279 F.3d at 1365. This does not, however, preclude a litigant from arguing that if a claim term must be broadly interpreted to read on an accused device, then this same broad construction will read on the prior art.

*See, e.g.*, *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007) (explaining that an infringement plaintiff must "beware of what [it] asks for" since a broad claim construction for infringement purposes may ultimately result in a determination of patent invalidity (internal quotation marks omitted)). To the contrary, as we have previously recognized, when an accused product and the prior art are closely aligned, it takes exceptional linguistic dexterity to simultaneously establish infringement and evade invalidity. *See Tate*, 279 F.3d at 1367 ("Where an accused infringer is clearly practicing only that which was in the prior art, and nothing more, and the patentee's proffered construction reads on the accused device, meeting [the] burden of [establishing invalidity] should not prove difficult."); *see also SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1341 (Fed. Cir. 2005) ("Because Apotex seeks to practice the prior art, and because that practice infringes, the next logical inquiry involves anticipation. That is, if the prior art infringes now, logically the prior art should have anticipated the claim before the filing of the . . . patent."); *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000) ("Although [the accused infringers] bore the burden of proving that the cartridges that were the subject of the pre-critical date sales anticipated the [asserted] patent, that burden was satisfied by [the patent owner's] allegation that the accused cartridges infringe the [asserted] patent."); *Evans Cooling Sys., Inc. v. Gen. Motors Corp.*, 125 F.3d 1448, 1451 (Fed. Cir. 1997) ("Although [the accused infringer] bore the burden of proving that the LT1 engine embodied the patented invention or rendered it obvious for purposes of the summary judgment motion, this burden is met by [the patentee's] allegation, forming the sole basis for the complaint, that the LT1 engine infringes.").

This is the problem Communique faced here. Citrix argued that GoToMyPC does not include a "location

facility" that establishes a communication channel between a remote computer and a personal computer, but that if Communique relied upon an "overbroad application" of its claims to ensnare GoToMyPC, then the asserted claims would also cover BuddyHelp. J.A. 1355. This argument did not rest on an improper "practicing the prior art" defense, but instead correctly recognized that claim terms must be "construed the same way for both invalidity and infringement." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003); *see Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("A patent may not, like a nose of wax, be twisted one way to avoid anticipation and another to find infringement." (citations and internal quotation marks omitted)).

## D. Prejudice

We also reject Communique's assertion that the comparisons Citrix made between GoToMyPC and BuddyHelp were "devastatingly prejudicial to the integrity of the trial." First, we have never suggested that any comparison between an accused product and the prior art mandates a new trial. *See Cordance*, 658 F.3d at 1335 (reinstating a verdict of invalidity where an accused infringer asserted that its accused product was substantially the same as its prior art product, but also "mapped each element of the asserted claims" to the prior art product "in a manner that mirrored [the patentee's] infringement theory"); *Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010, 1025 (Fed. Cir. 2009) (denying a patentee's motion for a new trial where an accused infringer had purportedly raised a practicing the prior art defense because any comparisons between the accused product and the prior art "had proper uses or were made in response to issues raised by [the patent owner]"). Second, "[a]lthough prejudice that affects the fairness of a proceeding can certainly be grounds for a new trial, when such prejudice is cured by instructions of

the court, the motion for a new trial should be denied." *Holmes v. City of Massillon*, 78 F.3d 1041, 1046–47 (6th Cir. 1996) (citations and internal quotations omitted). Here, the trial court's careful jury instructions were more than adequate to remedy any alleged prejudice or confusion resulting from comparisons between GoToMyPC and BuddyHelp. *See District Court Order*, 2017 WL 1065573, at *17 ("Given that Citrix did not improperly compare the prior art to the asserted claims as part of its infringement defense, any limited prejudice that may have resulted from the comparisons of [the] prior art to GoToMyPC during the invalidity phase [of the trial] was cured by the Court's specific instruction to the jury regarding their determination of infringement."). The district court instructed the jury that when resolving the question of literal infringement, it was required to compare the GoToMyPC product to the limitations set out in claims 24 and 45 of the '479 patent. J.A. 2820. Importantly, moreover, the court emphasized that "[t]he determination of literal infringement depends on the presence of the claim elements in the accused product, *not on similarities between the accused product and the prior art*." J.A. 2821 (emphasis added). These instructions made abundantly clear that in assessing infringement the jury was not to compare GoToMyPC with BuddyHelp. The record contains nothing to suggest that the jury misunderstood the trial court's explicit instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions." (citation omitted)).

## E. The Reexamination Record

We conclude, moreover, that the trial court did not abuse its discretion in ruling that while the PTO reexamination record could be used at trial, the jury could not be informed that Citrix was the party that requested the reexamination. J.A. 37; *see Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) ("In deference to a district court's familiarity with the details of the case and

its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings."); *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1343 (Fed. Cir. 2009) ("The district court did not abuse its discretion in concluding that the prejudicial nature of evidence concerning the ongoing parallel reexamination proceeding outweighed whatever marginal probative or corrective value it might have had in [the] case."). Under the circumstances here, the trial court did not err in concluding that the fact that Citrix had requested reexamination was "of very minimal . . . probative value," and that the jury could potentially "put undue weight on the fact that it was Citrix who advanced the arguments which, in the end, were rejected by the PTO, even though the PTO does not make its decision based upon the same standard as used in an infringement/invalidity lawsuit." J.A. 37–38; *see United States v. Boyd*, 640 F.3d 657, 667 (6th Cir. 2011) ("We afford the district court very broad discretion in determining whether the danger of undue prejudice outweighs the probative value of the evidence." (citations and internal quotation marks omitted)). We have considered Communique's remaining arguments but do not find them persuasive.

### III. CONCLUSION

Accordingly, the order of the United States District Court for the Northern District of Ohio denying Communique's motion for a new trial is affirmed.

### AFFIRMED